I think if we feel we need them, we will ask you and the government to provide the additional updating of what's happened to this petition. I appreciate it. Thank you both. Okay. Next case is number six, 1234 in Re Omega Sa. Mr. Wagner. Good afternoon, your honors. May it please the court. Omega appeals the trademark trial and appeal board decision affirming the trademark examiner's final refusal to accept Omega's application to register the mark Aqua Terra for a variety of goods in class 14. These goods in their entirety are jewelry. But there's only one good at issue, right? That's correct, your honor. However, the recitation of goods is in fact relevant to a determination of the issues. It would help me if you would explain something to me, which I don't understand. As I read your brief, you're saying that as used in this application, chronographs means watches. Is that right? That's correct, your honor. Well, then why, if chronographs means watches, did you object to the examining attorney's proposal that you amended to say that explicitly? Because, your honor, as the TTAB briefs make clear, for over 40 years, there has been a practice and an application in the rules and regulations of the PTO in which chronographs is not indefinite. In fact, it is reasonably particular. And Omega, whether or not, I don't understand why you said you would not make the change that the examiner told you you should make when you seem to be telling us that the change conforms to the facts. I mean, maybe the examiner was being too demanding in requesting this specific change. But so what? What's the difference? Why shouldn't it be made unless, which some suspicious people might think, that you really hoped that if you could get this word chronographs listed without any qualifications, there might be some other types of chronographs that you would want to use the mark on. Well, your honor, that would not be an unreasonable suspicion where you see, I could understand your argument if you said that chronographs is not limited to watches. But as I read your brief, you're saying chronographs is the same thing as watches. And that I find somewhat peculiar because the description of the goods in your first amended application includes watches. That's correct, your honor. But I don't understand why if it includes watches, you also add chronographs unless chronographs means something other than watches. But you tell us in your brief that that's what it means. Your honor, chronographs are a type of watch. And in fact, in our idea of goods as amended, it states chronographs, chronometers, watches and parts thereof. In fact, the recitation of goods makes it clear that the chronographs is merely a type of watch. So Judge Friedman's asking you, why should you care and why should we care? And if I understand the answer to that, it's in your reply brief. And the answer is you have other registrations where you got the word chronograph through and you're afraid that somebody's going to challenge those as being invalid. Am I correct? Yes. And in fact, it's not just us, your honor. I refer now to the registrations of A60 to 116, where Omega has maintained registration since 1953 for over half a century for chronographs standing alone in class 14. Is every watch a chronograph? No, your honor. It isn't. No, a chronograph. But every chronograph is a watch. Every chronograph, every watch containing a chronograph is obviously a watch. Now, for example, I have a wristwatch, which in addition to recording the time also states the date and the day of the week. Is that a chronograph? It is a watch containing a chronograph. That is correct. But the date of the week is not a chronograph function. Chronograph has a specified meaning. And getting back to Judge Dyke's comments, we are not the only one to maintain registrations over these years. IWC, Rotor, Diesel, Eberhardt, Chronos, Swiss, all famous brands that the court is probably familiar with, maintains these registrations for chronographs standing alone in class 14. So what's the risk? What's going to happen? If somebody is going to challenge that on the ground that the description of the goods isn't sufficient, does that invalidate the trademark? Well, your honor, we have a series of registrations. And when we enforce those registrations, the idea of goods is scrutinized. And if we have registrations where it says chronograph standing alone, and in another where it says chronographs for use as watches, then a question arises whether or not those two things are indeed different. And there is no reason for... What's the risk here? Help me understand what the risk is with respect to these other trademarks where the word chronograph was registered. Is somebody going to challenge that trademark and say it's invalid? Is that what's going to happen? That's correct, your honor. That is a valid risk that we... The entire registration would fall, the registration from the 50s, because there's been an action that appears to somehow redefine chronograph? That's correct, your honor, that the entire registration could be challenged as containing an indefinite description of goods. And your honors, the issue here... That's the trademark law. If you've got a class of goods, as one sees for trademarks, a lot of things are mentioned. Let's say your trademarks for clothing and you're no longer making stockings and you've got stockings in there and you've stopped making stockings for use with your trademark. Let's say it's, I don't know, nothing springs to mind, but trademark for goods. That the whole thing, the whole shooting match is now legitimately subject to challenge and invalidation? That's correct, your honor. Cancellation. If the registration is renewed without a change to that description, then the, especially the most recent cases of this court... But you now just said something very interesting. So if your 1950s trademark is challenged, the one that lists chronographs along with other watches, all you'd have to do is amend it to say chronographs for watches. You cannot simply amend at any time. You can only delete goods from an application. But you can amend it with the approval of the trademark office, can't you? I don't believe so. Not an existing registration. A new application for registration must be filed, which, of course, creates problems with priority dates. We have just been granted on September 19th, 2006, another registration, including horological instruments. Now, this is significant in this case. It's not on the record because it just happened. But the original idea of goods that was rejected by the examiner as indefinite was for, among other things, horological instruments. And we amended that to make it more definite by adding chronographs, chronometers, and watches and so forth in this description. We amended it to that description because that is what we and all of the other registrations historically have had in the identification of goods. Even more significant. Really, but what are you telling us? The examiner here or the board was arbitrary, picky or unfair, or that there are legitimate legal risks. Both, your honor. Both, your honor. As recently as October 10th, 2006, the office registered serial registration number 0857568 for the mark L.B. Ademars 1811 for chronographs in class 14 standing alone. That is not on the record. And I'm happy to submit that after. Don't you think the examining attorney has some substantial, probably substantial discretion to determine the degree of specificity required in describing the goods to which the mark will be attached? Yes, your honor. There is discretion, which is afforded. And in fact, why was this an abuse of discretion? Because you say it's clear. Yes, your honor. And in fact, the examining attorney didn't think it was so clear. Well, the examining attorneys throughout the last half century and more have found it to be clear that TTAB decision in this case from which we are appealing states that the office policy must change when there is cause for change. This legal conclusion is not only incorrect, but it has no basis in any fact that appears in the record. The board didn't think the examiner had acted arbitrarily or capriciously, did it? The board actually specifically identified that the examiner had departed from the historical application and interpretation of the rules and regulations. That is my question. Does the board say that the examiner had acted arbitrarily or capriciously? Does the board in effect say that even though the examiner may have departed from some of the prior registrations, nevertheless, the examiner acted within the bounds of his authority? The reason that the board did say that was because it recognized that there was a change that it was now adopting. That change is an inconsistent application of the rules and regulations without cause. That is an abuse of discretion by the examiner, and it is a reversible decision by the TTAB. What case holds the description of goods that's unclear and invalidates the trademark? What's the leading case? I would have to get, because we didn't brief that issue, I would have to get... It would have been good if you had, because that seems to be what this is all about. I think we'd be glad to receive supplemental briefing as compared with the last case. This is, I think, a significant issue, although I am going to ask the PTO counsel if this is really something that has to be resolved by the Federal Circuit as well. But I think we'd be glad to hear from both sides on this point. I appreciate that opportunity, and I'll also provide you with the recent registrations that I mentioned, where in fact the policy of the PTO has not changed. And for some reason, the TTAB in this instance identified that the examiner departed from traditional application of the rules and yet affirmed his decision in any event. This is a significant problem for OMEGA. We have numerous registrations that recite chronographs in class 14 standing alone, and there's no reason for any departure. There's none in the record, and there is none that can be presented here today. In fact, the only change that has occurred in the last half century that is of any consequence to this is the United States' accession to the Madrid Protocol, which we mentioned in our briefs, requires the office to adhere more so to the international NIS Convention of Identification of Goods in which chronographs stand alone. And that was rejected by the PTO, and that too was erroneous. In anything, the change that has occurred over the last half century, that being the change, militates in favor of OMEGA's position and the substantiation of the numerous registrations that we hold, as well as all of the others that I mentioned. Let's hear from the office, and to leave you enough time for rebuttal. Thank you. Mr. Walsh. Please, the court. When a party starts selling goods in the market and they associate a trademark or a brand name with those goods, they create trademark rights that are created by the use. The rights they create depend on how they use and mark. A trademark party that sells watches acquires trademark rights associating that mark with watches, not necessarily acquiring any rights with that mark associated with scientific recording instruments. Now, over time... But the word chronograph is used. It's a fancy word for a fancy watch, isn't it? It has nothing to do with scientific instruments. What's your view of Mr. Wagner's point that this is a usage that has not caused anybody any problem for decades and has been relied on by registrants in the watch business for years, and just all of a sudden, some sort of monkey bridge is being thrown into this nomenclature? Two things, Ron. First, one might suspect that there aren't any registrations for chronographs that say for use as watches, but in fact, there are over 400 that use exactly that language. One might suspect that there aren't any registrations that use chronographs for use as a specialized recording apparatus, but in fact, there are hundreds of them. So you're saying the inconsistency is widespread. No, I'm saying that, in fact, the practice is not to just simply use the word chronographs. Do they not have registrations that just use the word chronograph? There are some. So are those at risk? Could somebody challenge those and say, well, chronograph is not sufficiently descriptive of the goods, therefore your trademark for such and such, for the class of goods, chronograph, is invalid. It's doubtful that that's going to happen, because the person who has the rights has the rights associated with the use they've been making. The registration is a registration of that mark. The registration doesn't give them any trademark rights. Whatever their rights are, they adhere in their use. And the second part of my answer to Judge Newman's question is that over time, markets develop, markets ramify, they branch out. Let's imagine that 40 years ago, perhaps IBM registered a mark for software. And nowadays, people register marks for software for designing buildings, software for games, software for electric circuits, all more specific, because that market has been probably created no more than 50 or 40 years ago. But they couldn't use the IBM mark. Whatever qualifications there might be among different kinds of software, they couldn't use the mark. And even when IBM applies now for new registrations, it also specifies the goods more specifically. So the old marks are not in danger when a market spreads out and creates new products, all of which might fall under the heading like chronographs, but be completely different things. Are you dealing with that situation? There's no change in the market. I mean, they're saying that the word chronographs was used to mean watch in earlier registrations, that the word chronograph has been used to mean watch for generations. And they're worried that those trademarks are going to be held invalid. And I'm not sure what your answer is to that. I mean, do they have a real risk or don't they? I don't think they have any real risk. That argument wasn't raised. Because? Because their rights in the mark have to do with how they were using it. And their registration is not endangered if they registered something 40 years ago and they're still using it that way. When they apply for a new registration, what we're asking is that they identify the goods more consistently. And, for example, in the NIS classification that was mentioned in 1990. I notice at the very end of the board's opinion, the board says, we consider the officer's position that chronographs per se is an indefinite term to be correct. What does that hold? And I take it that's the holding of the board in this case. What does that do to all these other registrations? They all now contain an indefinite term, right? Well, I don't think it's going to hurt those registrations or the parties who have them in their lives. It's going to hurt them? Going forward, since 1993, when the NIS classifications were modified, to indicate that chronographs is an indefinite term. Let me ask you a different question. Suppose if we were to affirm this decision, a competitor of this company comes in and says to the board, it's now been determined that their registration contains an indefinite term, and since the registration can no longer be changed, we ask you to declare that registration invalid, at least as applied to chronographs. What does the office do? Would you permit it to be changed? Can you change these old registrations to add the qualification that was added that an examiner would require in this registration? I'm not exactly sure if they can change them outside of the time when they're renewing the registration. I think when they're renewing, they can limit the goods to more narrowly, say, chronographs for use as watches. I'm not sure if there are other provisions to do that. But I'm also not aware of any case where someone's registration has fallen because it used a term that was acceptable at the time. The term chronographs was recognized in 1993 as being ambiguous in the NIS classification. We've discussed this issue in our brief, where even the NIS classification says the chronograph term is ambiguous and one should clarify with brackets the word watches or with brackets the word recording apparatus. So those kinds of developments don't necessarily undermine the registrations that people have had for years. Why should they take that risk when you say don't necessarily? I hear a lot of hedging in what you tell us, but I think you must hedge because it hasn't been litigated. Omega doesn't want to be a test case with a valuable trademark to find that they're going to lose all their old valuable trademarks because they've got the word chronograph. Well, first, I don't think they're modifying the goods in this application. There's anything to undermine a separate registration. Is this a legal commitment on the part of the office or is this your personal opinion? Apparently, Mr. Wagner, on behalf of his client, is concerned. Your Honor, this individual application as it stands can easily say chronographs for use as watches. And it doesn't hurt at all any of the prior registrations where they had chronographs where their goods were watches at the same time. Am I correct in my understanding that under this decision, if this decision is affirmed, what happens is they have a choice. They can either amend the application as the examining attorney requested or they can go ahead with the application without the word chronograph. Is that it? Basically, the effect of the decision of the examiner saying you have to make this change and their refusal to change it is as though the word chronograph was struck from the application. The application will go forward, but it will not include chronograph. Is that correct? They could file a second application. If this were affirmed, they could file an application and just not use the word chronographs. They don't have to file a new application to this. Well, if this decision were affirmed, yes, they would have to file a new application. Without the word chronograph. They could do it either without the word chronograph or they could say chronographs as watches. Could they now request amendment of all the other applications to make the same change? I'm not sure of the answer to that. If you can't answer it, don't try to. Except we're told that you can't amend. I think you can amend the goods. And again, we haven't briefed that issue. If we can address that in a supplemental briefing, we could do that perhaps. It would be helpful. The consequences of this decision are farther reaching than I think was apparent from the briefing. I think it would indeed be helpful if both of you could pursue these issues that seem so uncertain and exchange your briefs before you file them with us so that you can argue with each other if that's required. And let's see how much time would be appropriate. These are big issues perhaps. Can we wait a month? I'd give them a month and ten pages. Yeah. Judge Dyke said we should have a page limit also. Okay. A month and ten pages. Thank you. And perhaps that will get us through to the next stage. If we may or may not ask you to come back for further argument, depending on how clear it seems at the time, if the office meanwhile can work it out internally, we might all be very pleased with that. Thank you, Your Honor. Is there anything else that needs to be said? You don't need to tell us anything else at this stage, I think. All right. Then the case is not under submission. We will wait to hear from you, and we'll see what happens next.